IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES E. BOUSSUM, | : | |
| Plaintiff | : | Civil Action 2:08-cv-770 |
| v. | : | Judge Smith |
| TERRY COLLINS, *et al.*, | : | Magistrate Judge Abel |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

Plaintiff Charles E. Boussum ("Boussum") is an inmate at the Chillicothe Correctional Institution.  In 1987 and 1988, he was convicted of three counts of gross sexual imposition, one count of illegal use of a minor in nudity-oriented material or performance, and thirteen counts of rape.  The three crime victims were all under the age of thirteen.  (Doc. 57-1 at 1-13.)  In 2008, Boussum was denied parole.  The parole board's finding was:

> This case is aggravated by the convictions for many sex offenses involving multiple victims.  Including photographs, and sadistic physical abuse.  Inmate has no criminal history, has completed some programming, and has good institutional conduct.  However, aggravating factors in this case warrant a lengthy continuance.  After weighing relevant factors, COBR does not consider the inmate suitable for release, and continues inmate 10 years from the end of the last continuance.

(Doc. 1-3 at 3.)  He has now filed this lawsuit concerning the imposition of certain

standards and the application of certain laws postdating his conviction. Following the Court's granting of a motion to dismiss, Plaintiff's remaining claims are 1) that the application of new, stricter parole guidelines contained in O.A.C. §5120:1-1-07 at his parole hearing, instead of the guidelines in effect at the time of his conviction, is violative of the Ex Post Facto Clause; 2) that the application of new victims' rights statutes enacted after the time of his conviction is violative of the Ex Post Facto Clause; and 3) that the former Director of the Ohio Department of Rehabilitation and Corrections ("ODRC") entered into a contract with the federal government that required the retroactive imposition of new penalties, violative of the Ex Post Facto Clause. Defendants have now moved for summary judgment on all remaining claims. Plaintiff has filed a memorandum in opposition to Defendants' motion, but has also moved for relief pursuant to Fed. R. Civ. P. 56(f). The discovery disputes which Plaintiff has brought before the Court have been resolved. *See, e.g.*, Doc. 64. However, Plaintiff avers in an affidavit accompanying his memorandum contra summary judgment that he requires "vital parole statistics, my parole file, and other information" in order to respond to Defendants' assertions.[1] These are addressed herein, and the Court will proceed to address the parties' arguments on their merits.

---

[1] Plaintiff, in his affidavit, states also with respect to this discovery that "[t]here is a pending motion to compel the Defendants to properly respond to my discovery requests". (Doc. 47 at 21.) The motion to which he apparently refers, however, addressed only the specific timing of his most recent parole hearing and the persons in attendance, not any parole statistics. *See* Doc. 44. As noted above, this dispute has been resolved.

**Summary judgment**.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (concluding that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary

judgment, however, the nonmoving party "may not rest upon its mere allegations [...] but [...] must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see *Celotex*, 477 U.S. at 324. Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; see *Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

### *Ex post facto* and parole guidelines.

In *Michael v. Ghee*, 498 F.3d 372 (6th Cir. 2007), the Sixth Circuit Court of Appeals described Ohio's new parole guidelines, enacted by Senate Bill 2:

> Under Ohio's former sentencing law, Ohio inmates were given an indeterminate sentence comprised of a minimum and a maximum sentence. An inmate became eligible for parole after serving his or her minimum sentence, minus credit for good behavior. Parole decisions were delegated to the Ohio Adult Parole Authority ("OAPA"). It determined when release was appropriate for each inmate. In 1995, Ohio adopted a new sentencing system for crimes committed after July 1, 1996. Under the new law, indeterminate sentences were abandoned in favor of fixed terms of incarceration determined by the defendant's presiding judge. The new system does not apply retroactively to Ohio inmates sentenced under the former sentencing scheme.
>
> In 1998, the OAPA adopted guidelines designed to guide the discretion of parole officers making release determinations for Ohio inmates sentenced prior to July 1, 1996. The guidelines are similar to the guidelines used by the United States Parole Commission, using two factors to determine how long a prisoner should be incarcerated before parole: (1) the seriousness of the inmate's crime, and (2) the "risk of reoffense," based on the inmate's prior criminal conduct and performance on probation and parole. The presumptive amount of time an inmate serves is determined by finding the intersection on a

> grid between the inmate's offense category and his or her risk of reoffense. Parole officials, however, retain discretion to depart from the guidelines, but may not retain an inmate beyond the maximum sentence.

*Id.* at 373-74 (citations omitted). The *Michael* court found that an inmate can challenge the retroactive application of the 1998 Ohio guidelines where they create a "sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 384, quoting *Garner v. Jones*, 529 U.S. 244, 250 (2000).

> Plaintiffs can satisfy this burden in one of two ways. First, plaintiffs can establish an *ex post facto* violation if they can show that the guidelines, on their face, show a significant risk of increased incarceration. Second, when the guidelines do not by their own terms show a significant risk, plaintiffs "must demonstrate, by evidence drawn from the [guideline's] practical implementation by the agency charged with exercising discretion, that its application will result in a longer period of incarceration than under the earlier [guidelines]."

*Michael*, 498 F.3d at 384, quoting *Garner*, 529 U.S. at 255. However, the "focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage', [...] but on whether [the] change [...] increases the penalty by which a crime is punishable." *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3 (1995). *See also Foster v. Booker*, 595 F.3d 353, 362 (6th Cir. 2010).

Plaintiff argues that O.A.C. §5120:1-1-07, which in part implements the new 1998 guidelines, requires at (B)(8) that the parole board, in considering the release of an inmate, consider "[t]he equivalent sentence range under Senate Bill 2, (effective July 1, 1996,) for the same offense of conviction if applicable."[2] However,

---

[2] O.A.C. §5120:1-1-07 provides, in relevant part:

(B) In considering the release of the inmate, the parole board shall consider the following:

(1) Any reports prepared by any institutional staff member relating to the inmate's personality, social history, and adjustment to institutional programs and assignments;
(2) Any official report of the inmate's prior criminal record, including a report or record of earlier probation or parole;
(3) Any presentence or postsentence report;
(4) Any recommendations regarding the inmate's release made at the time of sentencing or at any time thereafter by the sentencing judge, presiding judge, prosecuting attorney, or defense counsel and any information received from a victim or a victim's representative;
(5) Any reports of physical, mental or psychiatric examination of the inmate;
(6) Such other relevant written information concerning the inmate as may be reasonably available, except that no document related to the filing of a grievance under rule 5120-9-31 of the Administrative Code shall be considered;
(7) Written or oral statements by the inmate, other than grievances filed under rule 5120-9-31 of the Administrative Code;
(8) The equivalent sentence range under Senate Bill 2, (effective July 1, 1996,) for the same offense of conviction if applicable;
(9) The inmate's ability and readiness to assume obligations and undertake responsibilities, as well as the inmate's own goals and needs;
(10) The inmate's family status, including whether his relatives display an interest in him or whether he has other close and constructive association in the community;
(11) The type of residence, neighborhood, or community in which the inmate plans to live;
(12) The inmate's employment history and his occupational skills;
(13) The inmate's vocational, education, and other training;
(14) The adequacy of the inmate's plan or prospects upon release;
(15) The availability of community resources to assist the inmate;
(16) The physical and mental health of the inmate as they reflect upon the inmate's ability to perform his plan of release;
(17) The presence of outstanding detainers against the inmate;
(18) Any other factors which the board determines to be relevant, except for documents related to the filing of a grievance under rule 5120-9-31 of the Administrative Code.

(C) The consideration of any single factor, or any group of factors, shall not create a presumption of release on parole, or the presumption of continued incarceration. The parole decision need not expressly address any of the foregoing factors.

"[t]he current Senate Bill 2 requirements have no comparable counterparts that were in effect in 1987 and 1988." (Doc. 47 at 10.) At his May 2008 parole hearing, Plaintiff states, the parole board retroactively applied the new O.A.C. §5120:1-1-07. However, "[t]he current Senate Bill 2 standard is thirty (30) years... [exceeding] the incarceration standard of eighteen (18) years in 1987 and 1988." (*Id.* at 11.) This, Plaintiff asserts, shows on its face a significant risk of increased incarceration.

The problem with Plaintiff's argument is that it is manifest from the May 2008 Parole Board decision he provided that the board did not base its parole decision upon consideration of the new Senate Bill 2 sentence range ((B)(8)). (Doc. 47 at 64-65.) The decision itself refers to Plaintiff's lack of prior criminal record ((B)(2)) and institutional conduct and completion of programming ((B)(1)) as mitigating factors showing some suitability for release. However, as the excerpt from §6 of the report quoted at the beginning of this opinion states, the parole board found that the nature of, and circumstances surrounding, Plaintiff's crimes presented aggravating factors which warranted a lengthy continuance.[3] (*Id.* at 65.) The board could, under subsection (B)(18), consider these factors. The parole

---

[3] Roy F. Rauschenberg, a member of the parole board which conducted Plaintiff's suitability hearing, stated in an affidavit that, upon his personal knowledge, this report accurately reflects the parole board's decision not to release Plaintiff because of the aggravating factors surrounding his crimes. (Doc. 51-1 at 1.) Rauschenberg also testified affirmatively that the board did not consider subsection (B)(8), and that it never does in cases where the new Senate Bill 2 equivalent sentence length would be longer than the originally imposed sentence. (*Id.* at 2.)

7

board's decision did not expressly address the Senate Bill 2 sentence range. In fact, subsection (C) provides that the Senate Bill 2 factor could not, contrary to Plaintiff's assertion, itself create a presumption of continued incarceration, and provides that the parole board need not address it.

Ohio's parole system grants considerable decision-making discretion to the parole board. Instead of a deterministic scheme compelling certain results based upon a particular crime and particular time served, it instructs the parole board in what factors it shall take into account, and then grants it the authority to make its own determination as to whether an inmate should not be released. One such possible determination is that "[t]here is substantial reason to believe that due to the serious nature of the crime, the release of the inmate into society would create undue risk to public safety, or that due to the serious nature of the crime, the release of the inmate would not further the interest of justice nor be consistent with the welfare and security of society." (*Id.*, quoting O.R.C. §5120:1-1-07(A)(2)).[4] In *Foster v. Booker, supra*, the Sixth Circuit Court of Appeals addressed a similar challenge to Michigan's parole system, which had changed in 1992 to implement

---

[4] By contrast, in *Dyer v. Bowlen*, 465 F.3d 280 (6th Cir. 2006), the Sixth Circuit Court of Appeals found potentially *ex post facto* a change to Tennessee law which changed that state's parole system from *mandating* that a board grant parole where it found an inmate suitable for release to *permitting* a board to grant parole where it found an inmate suitable for release (and requiring it to consider the seriousness of the inmate's crime). *Id.* at 282-83. The new O.A.C. §5120:1-1-07, however, did not either increase or decrease the amount of the board's discretion to grant parole, but merely required it to consider an additional element when making its decision. It mandated no change to that decision.

tougher standards such as less frequent hearings. The *Foster* court found, however:

> To the extent that plaintiffs have shown they face a significant risk of increased punishment under the new parole regime, plaintiffs have not shown that this risk is attributable to statutory changes to the parole process and not to a change in the way the Board legitimately exercises its discretion. The decision whether to grant parole has always been within the Board's discretion. [...]
>
> Despite the fact that the scope of the Board's discretion has remained the same, plaintiffs argue that, in practice, the new Board applied a harsher standard than the old Board when deciding whether to grant parole. However, plaintiffs' contentions do not make out an ex post facto violation.
>
> If the Parole Board decided within its discretion to get tougher, that could hardly amount to an ex post facto violation as long as it was within the Parole Board's discretion to get tougher.

*Id.* at 362. The parole board in Plaintiff's case, likewise, determined that the nature of his crimes made him unsuitable for parole. It was within its discretion to do so regardless of what changes Senate Bill 2 made to a sentence for rape or when Plaintiff had been sentenced. Plaintiff, therefore, has not demonstrated that the addition of the new factor to the parole board's areas of consideration shows on its face a significant risk to him of increased incarceration..

However, "[t]he presence of discretion does not displace the protections of the Ex Post Facto clause". *Garner*, 529 U.S. at 253. Plaintiff also presents a statistical argument that post-Senate Bill 2 changes to Ohio's "grid intersection" parole board guidelines require a parole board to increase the time served for prisoners with multiple separate offenses, and that the guidelines in effect at the time of his sentence did not contain this requirement. This has, he argues, had the practical

9

effect of increasing the average time served for multiple offenders:

> The average time served standard for a Rape conviction in 1987 for male offenders was 6.11 years. When the figure of 6.11 years is multiplied times three (3) – the number of Plaintiff's Rape offenses – the average time served standard for 1987 is 18.33 years, or 18 years and four (4) months. Compare this figure to the current average time served standard of 18 years times three (3), and the current average time served standard that was applied to Plaintiff in 2008 is fifty-four (54) years.

(Doc. 47 at 5, citations omitted.) However, Plaintiff's statistical methodology is unsound.[5] In the first place, Plaintiff was sentenced for thirteen counts of rape, not the three he claims here.[6] By his argument, he would therefore have served seventy-nine years and five months under the 1987 standard, a time which, just as with the two hundred and thirty four his calculations would indicate for the current standard, would appear to preclude parole at any point in his sentence.

In the second place, even in 1987 the average time served for thirteen rapes was not necessarily thirteen times the average time served for a single rape. As

---

[5] Defendants have moved to exclude these statistics as evidence improperly presented. (Doc. 49.)

[6] As noted above, Plaintiff convicted of three counts of gross sexual imposition, one count of illegal use of a minor in nudity-oriented material or performance, and thirteen counts of rape. He was sentenced to two years for gross sexual imposition and four to fifteen years for illegal use of a minor, with these two sentences to run concurrently. He was also sentenced, in a separate proceeding, for thirteen rapes, to terms of five to twenty-five years apiece. However, the sentences were to run concurrently in three consecutive groups, one for each rape victim. Plaintiff is therefore referring, perhaps, to the three sets of consecutive rape sentences he is serving, but he is serving five sentences concurrently, then four sentences, then four more. Plaintiff had, at the time of the filing of this lawsuit, served about twenty-one years.

10

Defendants point out, Plaintiff was not sentenced for a single crime, or even for a small group with one most prominent conviction.  He was sentenced for seventeen felonies, thirteen of which were rape upon child victims.  Plaintiff's circumstances are so unusual that it strains the powers of statistical analysis to identify comparable offenders and compare their parole rates before and after 1998.  Defendants do not provide specific evidence to support their assertion that "[t]he astonishingly grotesque and inhumane facts and circumstances surrounding Plaintiff's convictions make him unlike any other Ohio inmate." (Doc. 56 at 2.)  However, the Court can safely conclude that few enough inmates in the Ohio penal system are similarly situated to permit a meaningful statistical comparison before and after 1998.  Although Plaintiff has alluded generally to his need for more data in his request for relief under Rule 56(f), only analysis of inmates with comparable convictions and sentences would have probative value.  *Dyer*, 465 F.3d at 292; *see also Ridenour v. Collins*, 692 F.Supp.2d 827, 854 (S.D. Ohio 2010).  And, in the end, without such comparison, Plaintiff presents only a "speculative and attenuated possibility" that the new parole guidelines retroactively increased his punishment, not a genuine issue of material fact.  *Morales,* 514 U.S. at 509.  Defendants are entitled to judgment as a matter of law as to whether practical implementation of the new guidelines would result in a longer period of incarceration for Plaintiff.

### Grant applications.

Plaintiff states, in his memorandum contra:

To clarify the facts, Plaintiff's Ex Post Facto challenge to the

> retroactive application of violent offender classification policies is directed at the violent offender incarceration enhancements in current ODRC Policy 105-PBD-03 and Parole Board Guidelines, rather than a challenge to the contracts between the State of Ohio and the Federal government. The parole guidelines and Policy 105-PBD-03 were promulgated by Defendants in response to the commitments made by former ODRC Director, Reginald A. Wilkinson, in the "Violent Offender Incarceration and Truth-In-Sentencing" grant applications began [sic] in 1996. The current parole policies and guidelines are in direct response to the statutory assurances of Director Wilkinson in those grant applications.
>
> In Policy 105-PBD-03(V), Defendant Collins requires the Parole Board to concentrate its attention on offense behaviors such as murder, rape and other acts of significant interpersonal violence. The Parole Board Guidelines require incarceration enhancements for violent crimes under the "Multiple Separate Offenses" provisions and for specific violent offenses. These violent offender classification policies creates [sic] a significant risk of prolonging Plaintiff's actual period of incarceration.

(Doc. 47 at 6-7, citations omitted.) Plaintiff appears to present an argument very similar to the one previously addressed, which is that Ohio, as a result of certain assurances made in applications for federal grants, created new violent offender classifications and requires the parole board to consider these in making its parole decisions.[7] *See also id.* at 18-19. However, this argument is not well taken, for the

---

[7] Plaintiff claimed in his complaint more specifically that Ohio is obligated under the terms of certain grant agreements with the federal government to incarcerate prisoners such as Plaintiff for an average of 85 percent of his maximum sentence term. (Doc. 2 at 10.) Defendants assert, however, there exists no Ohio statute or Administrative Code provision imposing such a requirement or bringing it into effect, and Plaintiff has identified none. He attempted, in discovery, to compel Defendant Janes to admit that he is classified by the Ohio Adult Parole Authority as a "Part 1 Violent Offender". Plaintiff's claim that this was a category defined by Ohio law was addressed in the Court's order denying his motion to hold Defendant Janes in contempt. (Doc. 59 at 4.)

same reason as his argument with respect to Senate Bill 2.

**Victims' rights**.

Plaintiff claims, finally, that retroactive application of new victims' rights laws passed since his sentencing and implemented at his 2008 parole hearing was violative of the Ex Post Facto Clause:

> The current provisions in such victims' rights statutes as R.C. §5149.101, Chapter 2930 and 2967 of the Ohio Revised Code make the basis for denying parole mandatory, where in 1987 the basis for denying parole was discretionary.  For instance, the provisions in R.C. §5149.101 provide victims of crime or their representatives to appeal and overturn a decision of the parole board to grant parole.  In 1987, the victims of crime had no such statutory rights.  Moreover, the basis for denying parole in 1987 has been changed by the victims' rights statutes from discretionary to mandatory, in that the parole board is now required to consider any victims' statements or those of their representatives before denying or granting parole.  The retroactive application of these new victims' rights statutes removes prior parole board discretion, and creates a sufficient risk of increasing the measure of punishment for Plaintiff's offenses of conviction from 1987 and 1988.

(Doc. 47 at 7, citations omitted.)  Plaintiff repeatedly and misleadingly states that the new victims' rights statutes "make the basis for denying parole mandatory", rather than that they required parole boards to, *e.g.*, permit victims to appear and give testimony at parole hearings and the parole board to consider these.  This is not the same thing as removing the parole board's discretion as to what ultimate decision it will reach.[8]  "[A] law that is merely procedural and does not increase a

---

[8] Plaintiff's assertion that O.R.C. §5149.101 permits a victim of crime "to appeal and overturn a decision of the parole board to grant parole" is likewise unfounded.  *Ridenour*, 692 F.Supp.2d at 837.

prisoner's punishment cannot violate the Ex Post Facto Clause even when applied retrospectively." *Partridge v. Davis*, 2007 WL 2852340 (E.D. Mich. Sept. 30, 2007), citing *Barna v. Travis*, 239 F.3d 169, 171 (6th Cir. 2001). This Court has so held before. *See Ridenour, supra*; *Clumm v. Warden, Chillicothe Corr. Inst.*, 2008 WL 4346797 (S.D. Ohio Sept. 18, 2008). Moreover, as addressed above, providing the parole board additional factors to consider in making its judgment is not the imposition of an *ex post facto* law. Plaintiff's claims on this matter amount to an assertion of "some ambiguous sort of 'disadvantage'" insufficient to create a genuine issue of material fact as to a risk of increased punishment. *Garner*, 529 U.S. at 255, quoting *Morales*, 514 U.S. at 506-507 n.3.

### Conclusion.

For the reasons set forth herein, I **RECOMMEND** that Defendants' motion for summary judgment (Doc. 45) be **GRANTED**.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the party thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgement of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947

(6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.3d 15, 16 (2d Cir. 1989).

                                                                  <u>s/Mark R. Abel</u>
                                                                  United States Magistrate Judge